[Cite as *State v. Crowe*, 2016-Ohio-1579.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                             :

    Plaintiff-Appellee,                    :            CASE NO.   CA2015-07-065

                                     :                 O P I N I O N
   - vs -                                                                 4/18/2016

                                       :

MARK QUENTIN CROWE,                        :

    Defendant-Appellant.                 :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CR 30701


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Bryan Scott Hicks, P.O. Box 359, Lebanon, Ohio 45036, for defendant-appellant


**PIPER, P.J.**

{¶ 1}   Defendant-appellant, Mark Crowe, appeals his conviction in the Warren County Court of Common Pleas for operating a vehicle under the influence of alcohol.

{¶ 2}   Officer Jeff Strader of the Springboro Police Department was patrolling when he observed a white van traveling 54 m.p.h. in an area where the maximum speed limit was 35 m.p.h.  Officer Strader pulled behind the van and initiated a traffic stop.  After the van pulled over, Officer Strader approached the driver, later identified as Crowe, who told Officer

Strader that he did not have a valid driver's license. During his interaction with Crowe, Officer Strader observed that Crowe's speech was slow and broken, his eyes were bloodshot, and that a strong fruity odor was emanating from the van.

{¶ 3} Once Officer Strader confirmed that Crowe's license had been suspended, he had Crowe exit the van, and observed that Crowe had difficulty standing, and that the fruity odor was emanating directly from Crowe's person. Officer Strader then began the process of having the van towed, and observed empty cans of Sparks, a fruit-flavored alcoholic drink, as well as an unopened can of Sparks in Crowe's vehicle. Officer Strader then confirmed that the fruity odor he previously smelled was coming from the Sparks cans, which were cool to the touch. Officer Strader also found empty cans of beer in the van, which were warm.

{¶ 4} When Officer Strader asked Crowe if he had been drinking that day, Crowe stated that other men had been in his van who had been drinking, and denied drinking himself. Officer Strader then asked Crowe to perform field sobriety tests. Crowe agreed to a horizontal gaze nystagmus test, but refused the others; claiming he was unable to perform the one-leg stand and walk-and-turn because of a previous injury. Officer Strader then administered the HGN test and observed three out of a possible six clues of intoxication, thus indicating that Crowe was impaired. Officer Strader transported Crowe to the police department, and asked Crowe to submit to a breath test to determine his blood alcohol content. However, Crowe refused, stating that he would not submit to the test without having an attorney present.

{¶ 5} Crowe, who had been convicted of five prior OVIs in less than 15 years, was charged with two counts of OVI with specifications that he had been convicted of five prior OVIs in the past 20 years. Crow pled not guilty, and the matter proceeded to a bench trial. On the day the bench trial was to begin, Crowe requested a continuance because one of his witnesses was not present. The trial court denied Crowe's request for a continuance and

later found him guilty of the charges. The trial court then merged the counts for sentencing, and sentenced Crowe to an aggregate prison term of two years for the OVI conviction and specification. Crowe now appeals his conviction, raising the following assignments of error. For ease of discussion, we will address the assignments of error out of order.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT A CONTINUANCE.

{¶ 8} Crowe argues in his first assignment of error that the trial court abused its discretion in denying his motion for a continuance because one of his key witnesses did not appear for trial.

{¶ 9} It is well-established that a trial court has broad discretion in determining whether to grant or deny a continuance. *State v. Robinson*, 12th Dist. Clermont No. CA2015-01-013, 2015-Ohio-4533, ¶ 19. This court will not reverse the trial court's decision to deny a defendant's motion for a continuance absent an abuse of discretion. *State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 8. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 181.

{¶ 10} While there is no bright-line test for determining whether a continuance should be allowed, the trial court should be guided by consideration of several factors, "including the length of the requested delay, whether other continuances have been requested and received, the inconveniences likely to result, the reasons for the delay, and whether the defendant contributed to the circumstances giving rise to the need for delay." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 18.

{¶ 11} At the commencement of the bench trial, Crowe asked the trial court to continue the case because one of his witnesses failed to appear. Crowe admitted that he

- 3 -

had failed to subpoena the witness, claiming that he did not have a valid address for the witness. The trial court then addressed several factors, including that the charges had been pending for ten months, the case had already been continued once, the state's witness appeared and the state was ready to proceed, as well as Crowe's statement that his witness was "hard to track" down. The trial court also considered that the witness would have essentially testified that the beer cans found in Crowe's van on the day of the stop were his, but the witness could not testify to the circumstances of the actual stop or the fruity alcoholic drink being present in Crowe's van when he was stopped. We find that the trial court did not abuse its discretion in denying the motion.

{¶ 12} Regarding the length of the requested delay, there is no indication in the record how long of a continuance would have been necessary to procure the witness' attendance. As indicated by Crowe, the witness was difficult to find and had changed his mind after first agreeing to appear as a witness at trial. As such, there is no indication that the witness would have appeared, even if a continuance would have been granted given the difficulty in locating him and securing his attendance.

{¶ 13} The record also demonstrates that a prior continuance had been requested, albeit by the state, which gave both parties ample time to prepare their respective cases. Given that the state's witness appeared at trial and the state was ready to proceed, the record indicates that state and the court would have been inconvenienced by any continuance granted on the day the trial was set to begin.

{¶ 14} Moreover, and regarding the reasons for the delay, it is clear that Crowe did not attempt to subpoena the witness, and as such, contributed to the circumstances giving rise to the need for delay. Even if the witness had been difficult to "track down," Crowe could have subpoenaed the witness to compel his attendance at trial, but did not take any action to do as much. After reviewing the factors, as well as the limited impact the witness' testimony would

have had on the issues, we find that the trial court did not abuse its discretion in denying Crowe's request for a continuance. As such, Crowe's first assignment of error is overruled.

{¶ 15} Assignment of Error No. 3:

{¶ 16} THE TRIAL COURT ERRED FINDING SUFFICIENT EVIDENCE TO CONVICT.

{¶ 17} Crowe argues in his third assignment of error that his conviction was not supported by sufficient evidence.

{¶ 18} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Crockett*, 12th Dist. Fayette No. CA2014-08-018, 2015-Ohio-1765, ¶ 18. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 19} When offering proof, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. *State v. Crutchfield*, 12th Dist. Warren No. CA2005-11-121, 2006-Ohio-6549, ¶ 20. Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75. A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. *State v. Shannon*, 191 Ohio App.3d 8, 2010-Ohio-6079, ¶ 10 (12th Dist.).

{¶ 20} Crowe was convicted of OVI in violation of R.C. 4511.19(A)(2)(a) and (b), which provides that no person, who has been convicted of a prior OVI in the last 20 years, shall drive while intoxicated and then refuse to submit to a test to determine the person's blood

alcohol content. During the bench trial, the state presented testimony, that when viewed in a light most favorable to the prosecution, demonstrates that the essential elements of R.C. 4511.19 (A)(2)(a) and (b) were proven beyond a reasonable doubt.

{¶ 21} Officer Jeff Strader testified that he had been specially trained to detect intoxicated driving, and that his certificate on administering field sobriety tests was in good standing on the day he stopped Crowe. On the day in question, Officer Strader observed a white van speeding, and later determined that the driver was Crowe. Officer Strader testified that according to his radar, Crowe was driving at 54 m.p.h. in a zone where the maximum speed limit was 35 m.p.h. Officer Strader pulled behind Crowe's van and activated his lights, at which time Crowe continued to drive. Officer Strader then initiated his siren in addition to his lights, and Crowe continued to drive. Only after Officer Strader initiated his siren for a second time did Crowe pull over.

{¶ 22} Once Officer Strader made contact, Crowe indicated that he did not have a valid driver's license. Crowe also gave the officer conflicting stories as to where he was going, at first stating he was going to retrieve money from someone, and then later stating he was going home. Officer Strader testified that he noticed that Crowe's speech was "slow and broken," that Crowe "had no emotion in his voice," and that Crowe's vocal cadence was "very monotone." Officer Strader testified that the lack of inflection in Crowe's voice was indicative of impairment, especially when considering that Crowe told Officer Strader that he had to get home to his wife who was on her deathbed and was scheduled to have surgery the next day. Officer Strader also testified that Crowe's eyes were bloodshot and that there was a "strong, fruity odor coming from the vehicle."

{¶ 23} Once Officer Strader confirmed that Crowe did not have a valid driver's license, he informed Crowe that the van he was driving would be towed according to police department policy. As part of the towing process, Officer Strader informed Crowe that the

contents of the van would be inventoried. At that point, and without any question from Officer Strader, Crowe told Officer Strader that other men had been in his van that day.

{¶ 24} Upon Crowe's exiting his van, Officer Strader noticed that Crowe was "uneasy" on his feet and that there was a fruity odor emanating from Crowe's person, especially after Crowe was transported to the officer's police cruiser. Officer Strader testified that as he inventoried Crowe's van, he found empty beer cans in the back second row seating area of the van, and that he found four empty cans of a fruit-flavored alcoholic beverage called Sparks. While four of the Sparks cans were empty, there was one full can that had not been opened yet, and was located within "arm's reach" of the driver's seat. Officer Strader testified that the cans of Sparks, those opened and unopened, were cool to the touch and did not "feel like they'd been sitting" in the van all day.[1] Officer Strader testified that the Sparks cans had a fruity odor, the same that he had smelled emanating from Crowe's person.

{¶ 25} Officer Strader testified that when he asked Crowe about the empty cans of alcohol in his van, Crowe responded with several stories, including that four to five men had been in his van earlier in the day drinking. Crowe also told Officer Strader that the men had been working with him that day, and had cut down approximately 30 trees. However, the only tool located in the van was an ax. Crowe did not provide Officer Strader with the names of the men who were with him that day, nor could he indicate where the men were located at the time.

{¶ 26} Officer Strader testified that he asked Crowe to perform field sobriety tests, and that Crowe refused the one-leg stand and the walk-and-turn tests because he had a prior injury. However, Crowe agreed to take a HGN test, which showed three clues of impairment. Officer Strader testified that before he administered the HGN test, Crowe indicated that his

---

1. The record indicates that the day in question was very warm.

eyes were "perfect," and then later changed his story and told Officer Strader that he may be "deaf in one eye."

{¶ 27} Officer Strader testified that once he transported Crowe to the police station, Crowe refused to take a breathalyzer test to determine his blood alcohol content. Despite understanding the consequences of refusing the test given his past convictions, Crowe refused the test because he wanted to have a lawyer present during testing. The trial court also watched a video captured on Officer Strader's police cruiser video camera, which captured the interactions between Officer Strader and Crowe on the evening of the traffic stop. The trial court was therefore able to observe Crowe's demeanor, speech patterns, physical movements, and his general behavior on the night in question.

{¶ 28} When viewed in a light most favorable to the prosecution, the record indicates that Crowe was impaired while he was driving his van on the day in question. While the evidence was circumstantial that Crowe had, at the very least, consumed the Sparks alcoholic beverages, the state nonetheless presented sufficient evidence that Crowe was slow to stop once he was pulled over by Officer Strader, Crowe's eyes were bloodshot, his speech was slow and broken, he was uneasy on his feet, and that the HGN test showed multiple clues of impairment. Moreover, Crowe's refusal to participate in a breath test lends incredulity to his statement that he had not consumed alcoholic beverages that day. As such, we find that Crowe's OVI conviction and resulting specification, was supported by sufficient evidence.[2] Crowe's third assignment of error is therefore overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT IMPROPERLY RELIED ON THE HGN TEST AS SCIENTIFIC EVIDENCE BUT FAILED TO REQUIRE EXPERT TESTIMONY TO ALLOW

---

2. Crowe admitted on cross-examination that he had been convicted of OVI five times in the last 20 years, and has not disputed that aspect of his conviction and sentence on appeal.

SUCH EVIDENCE TO BE ADMITTED AS A SCIENTIFIC TEST.

{¶ 31} Crowe argues in his second assignment of error that the trial court improperly relied on the HGN test as scientific evidence of his intoxication because a HGN test is not scientific in nature absent supporting expert testimony.

{¶ 32} Despite Crowe's argument on appeal that the trial court erred by referring to the HGN results as scientific evidence, Crowe did not object to the trial court's statement when made. As such, Crowe has waived all but plain error. *State v. McCollum*, 12th Dist. Clermont No. CA2014-11-077, 2015-Ohio-3286, ¶ 11. A plain error is any error or defect "affecting substantial rights [that] may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978). Accordingly, an error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *McCollum* at ¶ 11.

{¶ 33} As stated by the Ohio Supreme Court, "HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 28. This is true because an "HGN test cannot be compared to other scientific tests, such as a polygraph examination, since no special equipment is required in its administration." *Id.* at ¶ 26.

{¶ 34} After the trial, the trial court pronounced its judgment, and relied on the HGN results as part of its reasoning for a guilty verdict. The trial court stated "the second compelling piece of evidence is the horizontal gaze nystagmus test and [Crowe's] failure to successfully complete all six parts of that test. That test is designed to provide some

scientific evidence that only alcohol would contribute to the quivering of the eye muscles under certain circumstances." The court later stated, "why did he fail the nystagmus test on both eyes? The scientific explanation for that is because he was impaired." Crowe now argues that the trial court erred in treating the HGN results as scientific proof of impairment without hearing expert testimony.

{¶ 35} However, and as stated above, the Ohio Supreme Court has clearly held that expert testimony is not necessary so long as the state lays a proper foundation that the administrating officer is qualified to give the test and that the proper testing techniques were used. During trial, Officer Strader testified to his certification in the area of administering field sobriety tests, and testified to the manner in which he administered the test to Crowe. Nothing in the officer's testimony indicates that he used improper testing techniques. While the trial court may have made reference to the HGN results as scientific in nature, the trial court's simple use of the adjective "scientific" did nothing to actually render the HGN test results scientific evidence requiring accompanying expert testimony. Nor did the use of the adjective demonstrate that the court improperly considered the results once the state presented the proper foundation that the test was properly administered by a trained and certified officer.

{¶ 36} Moreover, we would classify any error the trial court made in referring to the HGN results as being scientific in nature as harmless, rather than plain error, given the other evidence of guilt. The record does not indicate that the trial court placed any improper value on the results of the HGN test, especially where the trial court specifically made reference to other pieces of evidence to support Crowe's guilt, including Crowe's refusal to take the breath test, the videotape of Crowe's stop that showed his demeanor and actions during the stop, as well as the observations made by Officer Strader regarding his interaction with Crowe. As such, and given this other evidence of guilt, the trial court did not commit plain error by

relying on the results of the HGN test without having accompanying expert testimony. Crowe's second assignment of error is therefore overruled.

{¶ 37} Judgment affirmed.


S. POWELL and HENDRICKSON, JJ., concur.