[Cite as *State v. Marek*, 2022-Ohio-2044.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

      Plaintiff-Appellee,              :

                                   No. 110977

      v.                                          :

A.M.,                                             :

      Defendant-Appellant.            :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 16, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652869-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kerry Sowul, Assistant Prosecuting
Attorney, *for appellee*.

Law Office of Mark E. Porter, LLC, and Mark E. Porter,
*for appellant*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant, A.M.,[1] ("appellant") appeals her convictions for endangering her own child and tampering with evidence from the case. Our review reflects that appellant's convictions were supported by sufficient evidence, were not contrary to the manifest weight of the evidence, and were not subject to any spousal exception. Accordingly, we affirm the trial court's decision.

## I. Procedural History and Facts

{¶ 2} In 2019, appellant was charged with one count of endangering children (R.C. 2919.22(A)), one count of endangering children (R.C. 2919.22(B)(1)), and one count of tampering with evidence (R.C. 2921.12(A)(1)). The matter proceeded to a bench trial, at which the following pertinent evidence was presented.

{¶ 3} In 2019, appellant met D.M. online and moved with her two minor children to the Cleveland area to live with him. Appellant and D.M. subsequently married. After they moved in, D.M. installed a hidden camera shaped like a clock to spy on appellant's 11-year-old daughter, A.N., in the bathroom. D.M. would record videos of A.N. showering, using the bathroom, and in various states of undress, and download those videos to his iPad. He used the videos for his own illicit purposes.

{¶ 4} D.M. also began to sexually abuse A.N. While wrestling, D.M. put his hands on A.N., touching her chest and buttocks over her clothes. Appellant was occasionally present but, according to A.N., "unaware" when this occurred. The

---

[1] Pursuant to Loc.R. 13.2(B) of the Eighth District Court of Appeals, we refer to the parties by initials.

touching progressed to D.M. rubbing A.N.'s vagina and buttocks over her clothes, and her chest and buttocks under her clothes on several occasions. A.N. testified that D.M. would also shove her. On one occasion, in the presence of appellant, D.M. pushed A.N. with enough force to knock her over.

{¶ 5} At some point, appellant found the videos of her daughter on D.M.'s iPad. At this time, A.N. was not aware she was being recorded and appellant did nothing to protect her daughter. In April 2020, appellant discovered videos of a former girlfriend of D.M.'s on one of his electronic devices and was very upset. This prompted A.N. to look through appellant's phone and it was then that she saw text messages that revealed that D.M. had placed a hidden camera inside a clock in the bathroom to secretly record the child. In the text messages, appellant discussed with D.M. and D.M.'s mother how they should dispose of the hidden camera and the incriminating videos. A.N. did not say anything to her mother about the text messages.

{¶ 6} Appellant also told her online pastor, "Chuck," about the hidden camera. Through text messages admitted at trial, Chuck told appellant that what D.M. did was a crime and she needed to get her daughter to a safe environment. Instead, appellant asked Chuck if he would counsel D.M. In June 2020, appellant told Chuck that A.N. was "suicidal." During these conversations with Chuck, appellant still believed that her daughter had no knowledge of the camera or video recordings.

{¶ 7} In June 2020, appellant overheard A.N. talking on the phone to a relative about the hidden camera. Appellant confronted A.N., at which time A.N. asked appellant to call the police, but appellant refused. A.N. asked to see a therapist, but appellant also refused that request. A.N. wrote her mother a letter to advocate for counseling and, according to A.N., "to apologize for not being in the right state of mind." At some point, appellant texted Chuck that her daughter found out about the camera and Chuck suggests D.M. write an apology letter. Appellant responded that she was concerned "someone would find the note that it wasn't intended for."

{¶ 8} In August 2020, appellant finally allowed A.N. to see a therapist. Appellant herself told the therapist about the hidden camera.

{¶ 9} Cuyahoga County Division of Children and Family Services (hereinafter "CCDCFS" or "the agency") social worker Deborah Mitchell testified that she received a referral that A.N. was in imminent harm and responded to the family home on August 18, 2020. Appellant told Mitchell that she knew about the camera but, according to appellant, D.M. had put the camera in the bathroom for security reasons. Mitchell told appellant that D.M. had to leave the family home and was not to have any contact with the children. D.M. went to stay with his parents.

{¶ 10} On the same day, after the social worker left, A.N. disclosed to her mother that D.M. had also been forcibly touching her. In response, instead of reporting the abuse, appellant took away A.N.'s Chromebook and phone and locked

the child's electronic devices in the basement. A.N. also overheard appellant telling a friend that she did not believe her daughter.

{¶ 11} On August 24, 2020, A.N. picked a lock and recovered her electronic devices. She contacted a friend out of state and asked that friend to call the police. The police responded to the house and found a visibly upset A.N., who told the police about the hidden camera and videos but did not disclose the abuse. Officer Matthew Ganska testified that he learned that the camera was no longer in the house and the videos had been erased.

{¶ 12} A few days later, social worker Mitchell interviewed A.N. and found out that D.M. continued to have contact with her and her sibling *even after he went to stay with his parents*. The agency determined the children were no longer safe in appellant's care, filed for emergency custody, and placed the children in a foster home. According to Mitchell, appellant's response to the children's removal was that she was "in the middle," was not going to take sides, and "[w]hat happens, happens." When Mitchell told appellant that A.N. had also disclosed that her stepfather had sexually abused her, appellant stated, "Well, you know, she walks around in her little pajamas and I can't control him, and that's on her."

{¶ 13} Mitchell testified that A.N. had been diagnosed with post-traumatic stress ("PTS"), depression, and borderline personality disorder. Mitchell testified that the children had to be removed from their first foster care placement after both A.N. and her three-year-old sibling exhibited signs of sexual trauma. According to

Mitchell, appellant was trying to have A.N.'s biological father, who lived in another country, take custody of A.N. so that A.N. could not "pursue" the case against D.M.

{¶ 14} William Conn, a computer forensic examiner, testified that he recovered over 2,300 videos from four SD cards taken into evidence in the case.

{¶ 15} D.M. testified and admitted that he had used a hidden camera to spy on A.N. in the bathroom for his own sexual gratification and sexually abused the child. As to the hidden camera, D.M. testified that he threw it out after appellant confronted him. D.M. participated in one remote counseling session with an online pastor at appellant's urging, after appellant found out about the hidden camera. Appellant never asked D.M. to move out of the house and he did not move out until CCDCFS ordered him to leave.

{¶ 16} Detective Buck Kidd testified that he has 24 years of experience as a police officer and has been a detective since 2008. He interviewed appellant and appellant admitted she knew about the hidden camera and downloaded videos. Appellant admitted to the detective that she deleted a video of A.N. going to the bathroom. According to the detective, when he asked appellant about the videos, she "sat there very calmly" and said, "I'm stuck in the middle. I'm between my husband and my daughter." The detective testified that he found it strange that appellant was more focused on her young daughter's behavior than on what her husband had done to her daughter:

> I've interviewed plenty of parents, parents of victims, child victims. None of them acted like that. None of them brought up 15 different times in a short period of time where, oh, my daughter dresses slutty,

she drinks alcohol, she's crazy, she bends over in front of people.  That was just strange to me * * * in my experience.

{¶ 17} Detective Kidd testified that the police took the following during the search of the house:

Apple Macbook, SD 18 card, LG cell phone, Motorola cell phone, a pad of 19 paper with writings on it about the case itself, [A.N.'s] diary, a blue binder, notes found in the trash, [ ] Chromebook, a thumb drive, photos of [D.M.], an HD WIFI covert clock camera box, camera, four more SD cards, a Gmail account, nine rolls of film, a thumb drive, a hard drive, a SanDisk SD card, more SD cards, more thumb drives, a Dell laptop computer, four more cell phones, plastic bag containing miscellaneous pictures and film, semiautomatic pistol, another semiautomatic pistol, box containing miscellaneous drives and memory cards, white cell phone, four more flash drives, white Samsung tablet, mini cassette 6 tapes, and a white game controller.

{¶ 18} When testifying about the images of A.N. that the police recovered, Detective Kidd testified that there were so many videos he could not go through them all.  Police also confiscated a notepad that appellant had used to make notes about the case with numerous derogatory statements about her daughter and pieces of paper from the trashcan where appellant had devised a "Plan A" and a "Plan B" of how to dispose of A.N.'s Chromebook.

{¶ 19} A.N. testified that she was in counseling and has been diagnosed with PTS, depression, and anxiety.  A.N. testified that she needed counseling to deal with what D.M. did to her and appellant's refusal to do anything about him.  According to A.N., after she discovered the hidden camera, D.M. wrote her two letters and her mother gave her a necklace that D.M. had bought for her.

{¶ 20} The trial court found appellant not guilty of endangering children under R.C. 2919.22(B)(1), guilty of endangering children under R.C. 2919.22(A), and guilty of tampering with evidence under R.C. 2921.12(A)(1). The court sentenced appellant to one year of community-control sanctions; appellant completed all terms and conditions of her sanctions, and her community control was terminated on April 27, 2022.

{¶ 21} Appellant filed a timely appeal and raises four assignments of error; we combine the first and fourth assigned errors for review.

> I. The trial court erred in convicting Defendant/Appellant's endangering children on insufficient evidence.
>
> II. The trial court erred in convicting Defendant/Appellant for endangering children because its finding was contrary to the manifest weight of the evidence.
>
> III. The trial court erred in convicting Defendant/Appellant for endangering children because of the spousal exception set forth in R.C. 2921.22(G)(1).
>
> I.V. The trial court erred in convicting Defendant/Appellant for tampering with evidence because the evidence adduced at trial was insufficient.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 22} In the first and fourth assignments of error, appellant argues that there was insufficient evidence to support her convictions.

{¶ 23} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State*

*v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Sufficiency of the evidence involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The question is not "'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *Id.*, quoting *Thompkins* at 390.

### 1. Sufficient Evidence – Endangering Children

{¶ 24} For appellant to be convicted of endangering children, the state had to prove beyond a reasonable doubt that appellant created a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. *See* R.C. 2919.22(A). The state further alleged that the violation resulted in serious physical harm to A.N., making the offense a third-degree felony. *See* R.C. 2919.22(E)(2)(c). The definition of "serious physical harm" includes "any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." R.C. 2901(A)(5)(a).

{¶ 25} The culpable mental state for endangering children is recklessness. *State v. Klofta*, 2d Dist. Montgomery No. 28690, 2020-Ohio-5032, ¶ 27, citing *State v. Greenlee*, 2d Dist. Montgomery No. 24660, 2012-Ohio-1432, ¶ 11. R.C. 2901.22(C) provides:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 26} "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 27} Appellant contends that there was insufficient evidence that she created a substantial risk to the health and safety of A.N. or acted recklessly in that regard because once she discovered the videos D.M. had of A.N., she acted quickly by ensuring D.M. was never again alone with A.N., sought spiritual guidance from her online pastor, and arranged to have the pastor counsel D.M. Appellant further claims that the state was unable to prove the element of serious physical harm because A.N.'s mental issues were either preexisting or caused by D.M.

{¶ 28} The evidence presented at trial showed that appellant knew her husband was surreptitiously recording her daughter in the bathroom but did not protect the child from him. From April 2020, when appellant found out about the hidden camera, through August 28, 2020, D.M. lived in the home with access to the

child. A.N. testified that, during this time, appellant left her alone with D.M. when she (appellant) would take her other child to the park or the store. D.M. also testified he was occasionally alone with A.N. between April and August 2020. A.N. testified that when appellant left her alone with D.M., she would barricade her bedroom door to protect herself from her stepfather because she was scared.

{¶ 29} Appellant discovered that A.N. knew about the hidden camera in June 2020, when appellant overheard her daughter talking to a relative. Appellant confronted A.N. A.N. asked her mother to call the police, but appellant refused. A.N. also asked her mother for counseling, but again appellant refused, even after A.N. wrote a letter to her mother to advocate for a therapist. In June 2020, appellant told Chuck, her online pastor, that A.N. was "suicidal," yet appellant did nothing to assist or protect her child; instead telling D.M. to write an apology letter and give A.N. a present.

{¶ 30} On August 24, 2020, after CCDCFS came to the house, A.N. finally disclosed to her mother that D.M. had also been inappropriately touching her. Instead of reporting the abuse, appellant took all of A.N.'s electronics and locked them in the basement so A.N. could not contact anyone. Appellant told a friend she did not believe A.N. and continued to let D.M. have contact with her children.

{¶ 31} The agency social worker testified that after the agency removed the children from appellant's care and placed them in a foster home, both children had to be removed and placed in a therapeutic foster home because they showed signs of sexual trauma. A.N. would be in weekly counseling for the foreseeable future.

{¶ 32} Although there is little doubt that D.M. contributed to A.N.'s mental condition, the finder of fact could additionally find that A.N.'s mental condition was caused by appellant's complete betrayal and abdication of her obligation to her child. D.M.'s crimes against his stepdaughter were horrific, but appellant failed to protect A.N. from her stepfather when she discovered the videos, conspired with D.M. and his mother to delete the videos, and refused to believe that D.M. sexually abused A.N.

{¶ 33} Appellant's failure to protect her daughter clearly could also be a contributing factor that caused A.N.'s mental condition requiring prolonged counseling; therefore, in looking at the evidence in a light most favorable to the state, the prosecution proved beyond a reasonable doubt that appellant acted recklessly, which created a substantial risk of serious physical harm to A.N.

## 2. Sufficient Evidence – Tampering with Evidence

{¶ 34} For appellant to be convicted of tampering with evidence, the state had to prove beyond a reasonable doubt that appellant, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: alter, destroy, conceal, or remove anything, with purpose to impair its value or availability as evidence in such proceeding or investigation. *See* R.C. 2921.12.

{¶ 35} Appellant argues that there was insufficient evidence that she tampered with any evidence in the case because D.M. testified that he was the one who deleted the videos and threw out the hidden camera. Appellant, however, told

Detective Kidd that she deleted a video. She also exchanged text messages with D.M.'s mother, stating that she (appellant) would delete the videos and tell the police that she had done so. Appellant further told D.M. that she would tell the police that she deleted the videos to protect him. Finally, there were numerous text messages deleted from appellant's phone including messages from appellant to D.M. regarding the hidden camera, the video recordings of A.N., what to do about the videos, and the allegations of abuse.

{¶ 36} "'When offering proof, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence.'" *State v. Pittman*, 8th Dist. Cuyahoga No. 110272, 2022-Ohio-300, ¶ 55, quoting *State v. Crowe*, 12th Dist. Warren No. CA2015-07-065, 2016-Ohio-1579, ¶ 19. In sum, the state presented sufficient evidence that appellant acted alongside D.M. and his family with the same purpose — to protect D.M.

{¶ 37} Based on this testimony there was sufficient evidence, if believed by the trier of fact, to support finding appellant guilty of endangering children and tampering with evidence beyond a reasonable doubt.

{¶ 38} The first and fourth assignments of error are overruled.

**B. Manifest Weight of the Evidence**

{¶ 39} In the second assignment of error, appellant argues that her conviction for endangering children is against the manifest weight of the evidence.[2]

{¶ 40} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Harris* at *id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all the evidence in the record, the reasonable inferences to make from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed [,] and a new trial ordered.'" *Harris* at *id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 41} Furthermore, in examining the manifest weight of the evidence, "the weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact." *State v. Metz*, 8th Dist. Cuyahoga Nos. 107212, 107246, 107259, and 107261, 2019-Ohio-4054, 146 N.E.3d 1190, ¶ 70, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact may "'believe or disbelieve any witness or accept part of what a witness says and

---

[2] Appellant does not argue that her conviction for tampering with evidence was against the manifest weight of the evidence; therefore, we do not address it on appeal.

reject the rest.'" *Metz* at *id.*, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "'[A]n appellate court may not substitute its own judgment for that of the finder of fact.'" *Harris* at ¶ 33, quoting *State v. Maldonado,* 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, ¶ 40, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶ 42} Appellant argues that her conviction was against the weight of the evidence because once she found out about the hidden camera, she confronted her husband, found counseling for her daughter and husband, confiscated her daughter's electronic devices, and ensured that her husband was never again alone with her daughter.

{¶ 43} Contrary to appellant's recitation of the facts, the evidence showed that appellant delayed in confronting her husband, refused to put her daughter in counseling when A.N. asked to see a therapist, and, according to both her husband and daughter, left them alone even after appellant knew about the video recordings.

{¶ 44} Based on the foregoing, we find that appellant's conviction was supported by the greater weight of the evidence. Accordingly, we overrule the second assignment of error.

## C. No Spousal Exception

{¶ 45} In the third assignment of error, appellant argues that the trial court erred in convicting her of endangering children due to the spousal exception as set forth in R.C. 2921.22, which is the offense of "failure to report a crime or knowledge of a death or burn injury."

**{¶ 46}** R.C. 2921.22 provides that no person, knowing that a felony has been or is being committed "shall knowingly fail to report such information to law enforcement authorities." R.C. 2921.22(A). Disclosure of the information is not required if the information is privileged due to the relationship between, among others, wife and husband. R.C. 2921.22(G)(1).

**{¶ 47}** Appellant cites *State v. Wardlow*, 20 Ohio App.3d 1, 484 N.E.2d 276 (1st Dist.1985), to argue that her conviction should be reversed. In *Wardlow*, the appellant was charged with the crimes of child endangering, R.C. 2919.22, and failure to report a crime, R.C. 2921.22. The court affirmed the appellant's conviction for child endangering and reversed the appellant's conviction for failure to report a crime.

**{¶ 48}** In this case, appellant was not charged with failure to report a crime under R.C. 2921.22. R.C. 2919.22, endangering children, the offense with which appellant was charged, contains no spousal exception or privilege nor does the exception found in R.C. 2921.22 apply to other offenses.

**{¶ 49}** The third assignment of error is overruled.

**{¶ 50}** Appellant's convictions for endangering children and tampering with evidence are supported by sufficient evidence and her conviction for endangering children is not against the manifest weight of the evidence. No spousal privilege exists for the crime of endangering children.

**{¶ 51}** Judgment affirmed.

**{¶ 52}** It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

ANITA LASTER MAYS, P.J., and
EMANUELLA D. GROVES, J., CONCUR